UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

                                                                                Chapter 7

MITCHELL J. COHEN,

                                                                                Case No.: 08-70271-478

              Debtor.
-------------------------------------------------------------------x
TREUHOLD CAPITAL GROUP LLC,

              Plaintiff,

- against -

                                                                                Adv. Pro. No.: 08-8161-478

MITCHELL J. COHEN,

              Defendant.
-------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

*Appearances:*

Benowich Law, LLP
*Attorneys for Plaintiff*
By: Leonard Benowich, Esq.
1025 Westchester Avenue
White Plains, New York 10604


Beck & Strauss, P.L.L.C.
*Attorneys for Defendant Mitchell J. Cohen*
By: Leland Stuart Beck, Esq.
50 Charles Lindbergh Blvd.
Uniondale, New York 11553


Honorable Dorothy T. Eisenberg

On May 23, 2011, the Court entered an order holding that Defendant/Debtor Mitchell J. Cohen's debt to Treuhold Capital Group, LLC's (hereinafter "Treuhold" or the "Plaintiff") was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). The Court retained jurisdiction over this adversary proceeding to determine the nondischargeable amount. Two days later, on May 25, 2011 the Plaintiff filed its application requesting that the Court fix the nondischargeable judgment amount (the "Application").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(I) and (O). Venue of this adversary proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTS:

### A. The Defendant's Fraudulent Actions

As the Court has noted before in its previous decisions connected with this bankruptcy case, prior to the Defendant filing his chapter 7 bankruptcy petition the Defendant and the Plaintiff were in business together. The Plaintiff purchased real property that the Defendant and his company, Metropolitan Housing LLC ("Metropolitan"), would renovate and then sell. The parties would evenly split the proceeds after expenses. Eventually the Plaintiff learned that the Defendant had fraudulently conveyed several properties from the Plaintiff to himself without the Plaintiff's knowledge. In January 2007, after the Plaintiff confronted the Defendant and his business partner, Steven Wissak ("Wissak"), the Plaintiff, the Defendant, Wissak and Metropolitan entered into a letter agreement wherein they agreed to make payments to the Plaintiff for damages as a result of the fraudulent conveyances. However, the Debtor, Wissak and Metropolitan ultimately defaulted on the January 2007 Agreement. Thereafter, in April

2007, the parties agreed to enter into the Settlement and Forbearance Agreement (the "April 2007 Agreement").

### B. The Terms Of The April 2007 Agreement

Under the terms of the April 2007 Agreement the Defendant, Wissak and Metropolitan (the "Obligors") acknowledged that they were, jointly and severally, liable to the Plaintiff in the amount of $1,935,986.02, plus interest for the Plaintiff's damages. The April 2007 Agreement provided that: (1) the Plaintiff was entitled to interest on the settlement amount at the rate of 12% *per annum*; (2) if the Obligors defaulted on their payments, then the interest rate would increase to 24% *per annum*; (3) the Obligors were to pay the Plaintiff's attorneys' fees of $50,000.00 that were incurred in the execution of the agreement; (4) the Obligors were to pay the Environmental Control Board fines against the properties in the sum of $9,412.00; and (5) if the Obligors breached the April 2007 Agreement, they would be liable for "all costs and expenses incurred as a result of [a breach of the April 2007 Agreement] or in connection therewith, including but not limited to Treuhold's attorneys' fees and expenses." The Defendant does not dispute the terms of the April 2007 Agreement. (Tr. August 30, 2011, pg. 26). Ultimately, the Defendant and Wissak failed to make the required payments under the April 2007 Agreement, and the Plaintiff commenced litigation to recover its damages. The Court has already determined that the Defendant's debt to the Plaintiff is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

### C. The Plaintiff's Damages

The Plaintiff states that its damages in connection with the Defendant's breach of the April 2007 Agreement are as follows: (a) $1,935,986.02 representing the agreed upon damages under the April 2007 Agreement; (b) $50,000.00 in Plaintiff's legal fees in drafting and

3

executing the April 2007 Agreement; (c) $559,933.16 in legal fees incurred by Plaintiff's counsel for various legal attempts to collect the debt due to it in connection with the Defendant's breach of the April 2007 Agreement; (d) $9,412.00 in Environmental Control Board fines against the fraudulently transferred properties; and (e) $1,253,781.09 in accrued interest on the sum due under the April 2007 Agreement (the interest was calculated from February 2007 through May 2011) at the contract rates set forth in the April 2007 Agreement. The sums combined totaled damages of $3,809,112.27 as of May 24, 2011, which is the date of Plaintiff's application for the Court to fix the amount of its nondischargeable debt. (ECF Docket No. 45-48). The Plaintiff requests *per diem* interest of $1,340.83 from May 24, 2011 through the entry of judgment, with postjudgment interest at the legal rate pursuant to 28 U.S.C. § 1961.

### D. The Plaintiff's Attorneys' Fees

Plaintiff asserts that under the terms of the April 2007 Agreement, Defendant is liable for Plaintiff's attorneys' fees in the sum of $559,933.16: (a) $374,474.22 for Plaintiff's legal fees and expenses in connection with the Defendant's bankruptcy case and the related adversary proceedings; (b) $143,550.00 for Plaintiff's legal fees and expenses in the related state court cases; and (c) $41,908.94 for Plaintiff's legal fees and expenses procuring a judgment against Wissak, and prosecuting a § 523 adversary proceeding against Wissak in Wissak's own personal bankruptcy case. The Defendant does not dispute the legal fees Plaintiff's counsel incurred in the state court cases or the Wissak case. (Tr. August 30, 2011, pg. 28-29). The Defendant does dispute the reasonableness of the legal fees incurred by Plaintiff's counsel in litigation connected to the Debtor's bankruptcy case and its related adversary proceedings.

### E. The Plaintiff's Litigation Against Steven Wissak

Plaintiff pursued litigation against Steven Wissak in connection with a promissory note that Wissak had personally given the Plaintiff in regard to his indebtedness wherein he had pledged a mortgage on his home to the Plaintiff. Wissak, in both his personal capacity and as a member of Metropolitan, signed the promissory note in favor of the Plaintiff for the sum of $857,000.00, obliging both himself and Metropolitan under the terms of the promissory note. The Defendant signed the promissory note as well, but only in his capacity as a member of Metropolitan; the Defendant did not personally obligate himself under that note. Wissak and Metropolitan defaulted on their payment of this note, and the Plaintiff successfully obtained a judgment against them in the sum of $761,522.00 plus attorneys' fees. After receiving the judgment, the Plaintiff settled the judgment with Wissak for the sum of $75,000.00.

### F. The Payments Received By The Plaintiff

The Court has previously determined that the Plaintiff has received payments from Cohen and Wissak pursuant to the April 2007 Agreement in the sum of $999,305.67. (December 20, 2010 Memorandum Decision and Order, Adv. Pro. No. 08-8058-dte). In addition, the Court had voided the Defendant's fraudulent conveyances of two properties, one located at 22-25 Brookhaven Avenue, in Queens County, New York (the "Brookhaven Property"), and the other located at 39 Coursen Place, Staten Island, New York (the "Coursen Property"). The properties were returned to the Plaintiff, and in the Court's December 2010 Memorandum Decision the Court held that the net proceeds from the sale of those two properties should be credited against any damages ultimately found to be owed by the Defendant to the Plaintiff. In the same decision, the Court determined that the net proceeds for the sale of the Brookhaven Property was $201,281.52.

On August 24, 2011, the Plaintiff filed a supplemental declaration of Alvin Sarter, the Plaintiff's principal, in which he stated that the Coursen Property was sold for $310,930.00 (the "Sarter Declaration"). Sarter further stated that Treuhold incurred expenses in connection with the sale of the Coursen Property in the sum of $92,547.31. These expenses included insurance on the property, legal fees related to the eviction of occupants on the property, unpaid utility bills and taxes on the property, renovation and repair costs for the property, and broker commissions. (Sarter Declaration, pg. 2-4). After deducting the expenses, Treuhold received net proceeds in the sum of $218,382.69. The total combined credit to Defendant for the net proceeds of the Brookhaven and Coursen properties is $416,664.21.

In addition, the Plaintiff consents to the Defendant receiving a credit of $75,000.00, representing the Plaintiff's settlement of the promissory note action with Wissak. The Defendant is entitled to a credit for sums previously paid under the April 2007 Agreement ($999,305.67), for the net proceeds derived from the sales of the Brookhaven Property and the Coursen Property ($419,664.21), and the settlement of the Wissak promissory note action ($75,000.00). Therefore, the total credit amount to be applied to the Defendant's nondischargeable debt to the Plaintiff is $1,493,969.88.

### G. The Defendant's Opposition

The Defendant does not dispute the terms of the April 2007 Agreement, but does dispute certain aspects of the alleged damages. Specifically, the Defendant raises the following objections to the Plaintiff's alleged total damages: (1) that the legal fees incurred in the Defendant's bankruptcy case and the related adversary proceedings have been excessive and unreasonable; (2) that the Plaintiff is not entitled to postpetition interest on its nondischargeable

debt; and (3) that the Defendant should only be responsible for one-half of the debt owed to Plaintiff because of the Plaintiff's settlement of litigation with Wissak.[1]

## Discussion:

**1. Are The Plaintiff's Attorneys' Fees Reasonable?**

Section 15 of the April 2007 Agreement provides that in "the event of a breach of this Agreement by any of Metropolitan, Cohen or Wissak, the defaulting party or parties shall pay to Treuhold, all costs and expenses incurred by Treuhold as a result thereof or in connection therewith, including but not limited to Treuhold's attorneys' fees and expenses." Due to Defendant's breach of the April 2007 Agreement, Plaintiff seeks to hold the Defendant liable for the legal fees it incurred in connection with the Defendant's bankruptcy case and the related adversary proceedings, the state court matters, and the Wissak litigation and settlement. The Defendant objects to the reasonableness of the fees requested and the necessity of the actions taken by Plaintiff's counsel.

As part of his opposition, the Defendant argues that in the absence of seeing a retainer agreement between Plaintiff and its counsel (Benowich Law LLP), it is possible that Plaintiff's counsel was acting on a contingency fee basis. Defendant fails to articulate how or why this would impact on Plaintiff's counsel's fee application. The point of the objection appears to cast aspersions on Plaintiff's counsel. The Court notes that at both the hearing before this Court on August 30, 2011 and in Plaintiff's counsel's papers, Plaintiff's counsel stated that he has represented Plaintiff over several years, he bills Plaintiff at an hourly-rate (not on a contingency

---

[1] In the Debtor's opposition to the Plaintiff's application, the Debtor argues that the Court already determined the amount of damages that Debtor owes to Plaintiff in the Court's Memorandum Decision and Order dated July 20, 2010 (Adv. Pro. 08-8058, ECF Docket No. 140). However, the part of that Memorandum Decision and Order that the Defendant is referring to was vacated pursuant to Court Order dated October 18, 2010. (Adv. Pro. 08-8058, Docket No. 154). As such, it has no bearing on the Court's instant Memorandum Decision and Order.

fee basis), and he has received payment on some of his fees. The Defendant's general opposition is unsubstantial and overruled.

In the Defendant's second attack on Plaintiff's counsel's fees, Defendant questions the reasonableness of Plaintiff's counsel's fees. At the August 30, 2011 hearing Defendant's counsel asked for additional time to review Plaintiff's counsel's time records to determine whether they were reasonable. (Tr. August 30, 2011 at 29-30). Defendant's counsel, stated in reference to reviewing the Plaintiff's counsel's time records, that Defendant's counsel would go through the records and provide the Court with a specific outline of his objections. (Tr. August 30, 2011 at 30).

However, after reviewing Plaintiff's counsel's time records, the Defendant's post-hearing papers only call into question two specific time entries: (1) Plaintiff's counsel's 15.7 hour preparation for deposition of a non-party witness who notarized the closings of the fraudulent conveyances of real property (including both the Brookhaven Property and the Coursen Property); and (2) Plaintiff's counsel's 35 hour preparation of an appellate brief to the District Court for the Eastern District of New York. In addition, at the August 30, 2011 hearing before the Court the Defendant's counsel raised an oral objection to a time entry of Plaintiff's counsel in which counsel spoke with the Assistant United States Attorney representing the United States in a fraud case in which the Defendant was involved. Defendant's papers do not further elaborate on this objection.

In his reply to the Defendant's post-hearing submission, the Plaintiff's counsel's states that the time spent on preparing for the deposition was necessary as the deponent was not just the notary who notarized the fraudulent conveyances, but also the Defendant's sister. Her personal relationship with the Defendant and her role in the fraudulent conveyances meant that she would

8

have provided information relevant to all aspects of the Defendant's fraudulent scheme. As for the appellate brief, the Plaintiff's counsel states that the amount of time was necessary to account for all of the legal arguments and factual issues raised between the parties. Furthermore, Plaintiff's counsel states that he had to "research and rebut numerous spurious and poorly-researched points of purported law that had been suggested – but never supported with any authority – by Cohen and the other defendants in the Main Adversary Proceeding." (Plaintiff's Supplemental Reply Declaration, pg. 5). Plaintiff's counsel noted that the Defendant appeared to abandon his oral objection as the Defendant's reply did not further elaborate on his opposition.

The Second Circuit has been clear that when considering the reasonableness of attorneys' fees a court should consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Schackner*, 2010 Bankr. LEXIS 1224, *10 (Bankr. E.D.N.Y. Apr. 6, 2010) (*quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186-90 (2d Cir. 2007). Besides the three specific instances noted above, the Defendant makes a general allegation that Plaintiff's counsel's actions were unreasonable and unnecessary. *See* In re Ralph Lauren Womenswear, 204 B.R. 363, 377 (Bankr. S.D.N.Y. 1997) (holding that opposition to fees must be specific in order to demonstrate why the requested fees are not reasonable).

The Defendant's objections are unpersuasive. The Court is familiar with the background and history of the Defendant's bankruptcy case and its related adversary proceedings and appeals, as well as the complexity of the fraudulent conveyances and the level of litigation between the parties. Plaintiff's counsel had continued opposition from the Defendant and Defendant's counsel throughout these proceedings. The Court cannot take a position on Plaintiff's counsel's efforts in the state court cases or the Wissak litigation as those were not before the Court, but the Defendant does not raise specific opposition to those fees. The Court finds that Plaintiff's counsel's time spent in matters before this Court were reasonable, and therefore the Defendant's objections to Plaintiff's attorneys' fees are overruled.

Section 15 of the April 2007 Agreement provided that if there was a breach of the agreement, then Treuhold would be entitled to recover all of its costs and expenses incurred as a result of the breach and in connection with the breach. As a result of the breach of the April 2007 Agreement by the Obligors Treuhold's counsel was forced to engage in litigation to protect Plaintiff's interests. It is appropriate and equitable for the Defendant to pay those costs in accordance with the agreement that he made. *See Martin v. Key Bank, N.A. (In re Martin)*, 208 B.R. 799, 806 (N.D.N.Y 1997) (holding that where the loan documents provided that the creditor would be entitled to reasonable attorneys' fees incurred in the collection of a debt, the creditor was entitled to said fees as a result of the debtor's breach of the contract and that those fees would be added to the total amount of the debt due); *In re Kellar*, 125 B.R. 716, 721 (Bankr. N.D.N.Y. 1989) (holding the debtor's fraudulent action in breaching a contract rendered the debt nondischargeable and further holding that the creditors' attorneys' fees were allowed because the underlying contract provided for them). Thus, Plaintiff's counsel's request for legal fees is

reasonable and appropriate, and the Defendant's opposition to their inclusion in the final judgment amount is overruled.

### 2. Is The Plaintiff Entitled To Postpetition Interest On Its Nondischargeable Debt?

The Defendant argues that it is improper for Plaintiff to include in its damages claim against the Defendant any interest that may have accrued after the Defendant filed his chapter 7 bankruptcy petition on January 1, 2008. The Defendant is correct that the general rule is that postpetition interest does not accrue on a prepetition claim against the estate. *See* 11 U.S.C. § 502(b)(2); *United Savings Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 372-73, 108 S. Ct. 626, 630-31, 98 L. Ed. 2d 740 (1988). The basis for the rule is the desire to avoid unfairness between competing creditors, and to avoid administrative inconvenience caused by the uncertainty of how much a claim against the estate may be if postpetition interest was allowed to accrue. *Bruning v. United States*, 376 U.S. 358, 360 (U.S. 1964); *In re Kellar*, 125 B.R. 716, 720 (Bankr. N.D.N.Y. 1989). However, there is an exception to the general rule if the debt in question is nondischargeable.

Postpetition interest continues to run on a nondischargeable debt as the claim is no longer against the estate, but against the bankrupt personally. *See Bruning v. United States*, 376 U.S. 358, 360 (U.S. 1964) (noting that the allowance of postpetition interest "cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors."). If a debt is found to be nondischargeable in bankruptcy, then postpetition interest is not only allowed but it is appropriate because denying it would only result in a windfall for the dishonest debtor who sought to thwart his creditor by filing for bankruptcy protection. *See Int'l Asset Recovery Corp. v. Thomson McKinnon Sec., Inc.*, 335 B.R. 520, 527 (S.D.N.Y. 2005) ("If a debt is non-dischargeable, interest continues to accrue until the debt is paid, even while the debtor is in

bankruptcy."); *Kitrosser v. CIT Group/Factoring*, 177 B.R. 458, 470 (S.D.N.Y. 1995) (noting that a denial of postpetition interest would serve as a "windfall" to the debtor, and that any such denial should "be permitted only when necessary to effectuate the orderly and fair administration of the bankruptcy proceeding"); *In re Kellar*, 125 B.R. 716, 720 (Bankr. N.D.N.Y. 1989) (allowing postpetition interest to accrue on a debt because the concerns to protect creditors is inapplicable since the debt is owed solely by the bankrupt and therefore has "no effect on the assets of the bankruptcy estate."); *see also Pierce v. Pyritz*, 200 B.R. 203, 206 (N.D. Ill. 1996) (noting that courts have allowed postpetition interest on a debt where the debt was nondischargeable under § 523); *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 209 (Bankr. S.D. Tex. 2006); *Klingman v. Levinson*, 58 B.R. 831, 837 (Bankr. N.D. Ill. 1986) (holding that the plaintiff was entitled to interest from the date of the debtor's bankruptcy petition due to the court's finding that the debt was nondischargeable pursuant to § 523(a)(4)).

Accordingly, as the Court has previously denied the Defendant's discharge of his debt to Plaintiff pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6), the Plaintiff is entitled to postpetition interest on its debt at the rates set forth in the April 2007 Agreement. *See In re Kellar*, 125 B.R. 716, 721 (Bankr. N.D.N.Y. 1989) ("Thus, the dual policy of making the creditor whole and deterring fraudulent conduct is served by awarding a successful plaintiff in a dischargeability action the contractually agreed upon rate of interest, and all of its rights under the contract including attorney's fees, until satisfaction of the debt."); *In re Foster*, 38 B.R. 639, 640 (Bankr. M.D. Tenn. 1984) (holding that a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) is entitled to interest at the rate bargained between the parties prepetition); *In re Fasulo*, 25 B.R. 583, 586 (Bankr. D. Conn. 1982).

Upon entry of the instant Memorandum Decision and Order the Plaintiff will be entitled to postjudgment interest on the judgment at the legal rate pursuant to 28 U.S.C. § 1961.

### 3. Is New York General Obligations Law §15-105 Applicable?

The Defendant alleges that the Plaintiff gave Wissak a release when the Plaintiff settled its promissory note litigation with him. Therefore, the Defendant argues that pursuant to New York General Obligations Law §15-105,[2] the Defendant is only responsible for 50% of the total damages in connection with the breach of the April 2007 Agreement. Under New York General Obligations Law §15-105 a "settlement with an obligor without reservation of rights against a co-obligor releases the co-obligor's obligation to the extent that the creditor was aware that the settling obligor was bound to the co-obligor to pay the obligation." *CDS Capital, LLC v. Young*, 2006 NY Slip Op 1756, 3 (N.Y. App. Div. 2d Dep't 2006). The cases cited by the Defendant in support of his argument were cases where a release was negotiated between all the parties.

The Plaintiff argues that as Cohen and Wissak were not co-obligors on the promissory note, upon which this settlement was based, section 15-105 does not apply. The Court notes that the promissory note was not signed by the Defendant in his personal capacity; rather the Defendant signed the promissory note as a member of Metropolitan. More importantly, the Plaintiff argues that the Defendant has failed to provide any evidence that the settlement provided in any way for a release of Wissak. The Plaintiff, at both the August 30, 2011 hearing

---

[2] Section 15-105 provides that:
>  1. If an obligee releasing or discharging an obligor without express reservation of rights against a co-obligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that co-obligor to pay, the obligee's claim against that co-obligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such co-obligor to pay.
>
>  2. If an obligee so releasing or discharging an obligor has not then such knowledge or reason to know, the obligee's claim against the co-obligor shall be satisfied to the extent of the lesser of two amounts, namely (a) the amount of the fractional share of the obligor released or discharged, or (b) the amount that such obligor was bound by his contract or relation with the co-obligor to pay.

N.Y. Gen. Oblig. § 15-105 (2011).

and in its papers, stated that its settlement with Wissak does not provide a release to Wissak. The Plaintiff submitted a copy of the settlement to Defendant's counsel and to the Court *in camera*, as its terms are confidential. In light of that confidentiality, the Court has reviewed the settlement, and only notes that the Plaintiff's representation that the settlement does not contain a release for Wissak is accurate.

There has been no release given to Wissak, and the Defendant has failed to provide the Court with any evidence of such a release or evidence that any of the three parties involved is not jointly and severally obligated to pay all damages fixed by the Court. Therefore, New York General Obligations Law § 15-105 is inapplicable, and the Defendant's request for the Court to find that he is only liable for 50% of the total damages is denied.

## Conclusion:

Pursuant to the above findings of fact and conclusions of law, Plaintiff's Application is granted and the Court finds that the Plaintiff's damages due to the Defendant's breach of the April 2007 Agreement can include the Plaintiff's reasonable attorneys' fees and postpetition interest.

As the Court noted above, the Plaintiff's damages are as follows: (a) $1,935,986.02 in damages under the April 2007 Agreement; (b) $50,000.00 in Plaintiff's legal fees in connection with the April 2007 Agreement; (c) $559,933.16 in Plaintiff's attorneys' fees; (d) $9,412.00 in Environmental Control Board fines; and (e) $1,253,781.09 in accrued postpetition interest. After these sums are taken into consideration, the Plaintiff's damages are $3,809,112.27.

The Defendant is entitled to a credit in the sum of $1,493,969.88 representing payments that the Plaintiff has already received in satisfaction of the April 2007 Agreement ($999,305.67),

the net proceeds from the sale of the Brookhaven Property and the Coursen Property ($419,664.21), and the settlement of the Wissak litigation ($75,000.00).

After applying the credit to the damages, the Court finds that the total nondischargeable debt that Defendant owes to Plaintiff is $2,315,142.39. The Court also awards the Plaintiff *per diem* interest at the rate of $1,340.83 from the date of Plaintiff's instant application for the Court to fix the nondischargeable judgment amount (May 24, 2011) through the date of this instant Memorandum Decision and Order.

Plaintiff is also awarded postjudgment interest on the judgment at the legal rate pursuant to 28 U.S.C. § 1961.

So ordered.

Dated: Central Islip, New York  
November 10, 2011

Dorothy Eisenberg  
United States Bankruptcy Judge